Edith A. JOHNSON, Plaintiff-Appellant,

v.

Margaret M. HECKLER,
Defendant-Appellee.

No. 83–2593.

United States Court of Appeals,
Seventh Circuit.

Argued May 25, 1984.

Decided Aug. 9, 1984.

Phillip V. Price, Atlas, Hyatt & Reuben, Indianapolis, Ind., for plaintiff-appellant.

Carolyn N. Small, Asst. U.S. Atty., Sarah Evans Barker, U.S. Atty., Indianapolis, Ind., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

COFFEY, Circuit Judge.

Plaintiff appeals the denial of Disability Insurance Benefits ("D.I.B.") and Supplemental Security Income ("S.S.I."). The Secretary of Health and Human Services denied appellant's claim because the administrative law judge found that Johnson was able to return to her past relevant work at Indianapolis Public Schools ("I.P.S.") as a school bus attendant for handicapped and emotionally disturbed children. The district court, adopting the report of a magistrate, held that the Secretary's decision was not supported by sufficient evidence but denied benefits on the ground that Johnson's impairments did not prevent her from performing sedentary work. We reverse the district court's finding of insufficient evidence and affirm the judgment of the Secretary.

I.

The plaintiff based her claim of disability on severe pain in her lower back and legs and or disabling ulcerations on her legs. Johnson who was 54 at the time she filed her disability claim was 5'3" in height and weighed 234 pounds.

Johnson's work history includes six years as a school bus attendant [1] (ending upon the date she claimed disability); two years as a factory fuel-pump assembler; and five years as a manager of an ice cream parlor. Johnson completed the seventh grade before leaving school at the age of 16.

The record reflects that Johnson was examined by seven physicians during a period from June 1977 until June 1980. Dr. Joseph Randolph, who began treating Johnson after a fall in a school bus, recited in April of 1978 that from his examination Johnson suffered from a permanent partial impairment of 5 percent of the person. Johnson was treated by Dr. Paul Strange in May and June 1979 for stasis dermatitis. Dr. Strange found that Johnson had the functional capacity to lift 20 pounds and frequently carry 10 pounds, could have extended periods of walking or standing for two hours in an eight-hour day, but could do no bending, stooping, pushing, or climbing. Dr. Strange found that Johnson's ulcerations were recurrent. Dr. Strange concluded that Johnson's impairments were not severely disabling and that she had the residual functional capacity to perform sedentary work. Dr. Strange's findings were made six days before Johnson filed her claim.

Johnson, together with her medical records were examined by several other physicians after filing her claim. Dr. Warren Tucker, who did not examine Johnson but reviewed the report of Dr. Strange at the request of the Indiana Disability Determination Division, agreed with Dr. Strange's findings that Johnson could stand or walk for two hours in an eight-hour day and that Johnson retained the functional capacity for sedentary work, stating that she could lift up to 10 pounds with occasional walking or standing, but no pushing, pulling or climbing. Dr. Betty

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. Johnson's duties as a bus attendant included walking with and assisting handicapped children from their house to the bus, into the bus and to their seat, out of the bus and into the school. Johnson assisted the children by lifting and carrying books, walkers and crutches, pushing wheelchairs, and picking up books and papers for the children. Although it was the driver's job to lift the children, Johnson testified that she often was also required to secure, adjust or lift crippled children to their seats or to assist one who was having a seizure.

Ray, who examined Johnson, diagnosed venous insufficiency with stasis dermatitis of several years duration, degenerative arthritis of the lower back and possible noctural asthma. She found that, although Johnson complained of wheezing, her lungs were clear. Dr. Ray concluded that Johnson could lift or carry 20 pounds, could stand or walk for extended periods of two hours and could sit for extended periods of two hours. Dr. Arcadio Alarcorn treated Johnson from May through October of 1980 for asthmatic wheezing, right shoulder pain, high blood pressure and a cysto rectocele. X-rays of Johnson's knees revealed changes compatible with mild or early changes of degenerative arthritis bilaterally. At the time of the examination no active chest disease was present. Dr. Thomas Lord, who also examined Johnson in 1980, concluded that she suffered from obesity, spondylolisthesis, mild to moderate chronic obstructive lung diseases which were aggravated by obesity, stasis dermatitis and varicose veins. Dr. Lord concluded that Johnson was not permanently or totally disabled, although she was somewhat limited, more on the basis of her obesity than on any other cause. Finally, Johnson was examined by Dr. James Browning in June of 1980. Dr. Browning diagnosed obesity, moderate incompetent varicose veins in both legs with minimal brawny edema and moderate pulmonary emphysema. He found that Johnson had the residual functional capacity for medium work stating that she could sit for eight hours, stand for four hours, and walk for two; continuously lift and carry 10 pounds, frequently lift 20 pounds and occasionally lift up to 25 pounds but never more; use both her feet for repetitive movements; frequently bend, and occasionally squat, crawl, climb, and reach. He found no work-related environmental restrictions. In the examinations made in the last year before the denial of the claims, no doctor found that Johnson was unable to work. Several found that she has the residual functional capacity for performing at least sedentary work.

At the time she filed her claims, June 20, 1979, Johnson was on a leave of absence from her job as a bus attendant for special education students. She testified at the hearing before an administrative law judge that she took the job so that she could be off her feet but that she had to be alert and ready to assist the children at all times, even if the bus was moving. Her duties consisted of carrying the students' books and crutches, pushing a wheelchair, caring for the children when they had seizures, walking with the students who were using walkers or crutches to assist them if they fell and assisted the children in buckling seat belts. At one point Johnson testified that she would lift a child who needed assistance. At another point she testified that the bus driver lifted the children while she got the wheelchair for the child. Johnson further testified that she pushed wheelchairs, was required to pick up papers or books and reached occasionally to help children. She did no squatting nor walking nor climbing except to enter the bus. In a prehearing exhibit she stated that the job involved three hours of walking, two hours of standing, one hour of sitting, frequent bending, occasional reaching, and no lifting or carrying. Johnson alleged that, because of pain in her legs and body, a breathing problem, and trouble with her varicose veins which occasionally would "pop" when she was on her feet too long, she had trouble getting up and down, in and out of the school bus and climbing the 22 stairs to punch her time card four times a day.

Johnson testified that, at the time of the hearing, she did very little housework but did make the bed, did the dishes, did some dusting and ran the sweeper (pushing with her left hand). She cannot do anything involving reaching. She drives about ten miles three or more times per week to a health spa for therapy on her shoulder, and does some grocery shopping. She goes to church twice on Sundays and sometimes during the week.

Johnson's prior jobs at a dry-cleaning establishment in 1970–1973 and 1978–1979, involved standing, lifting up to 40 pounds, carrying and bending. She also checked the money at the close of the day and

deposited it in a safe. Her job as the manager of an ice cream parlor, which she held from 1963 to 1969, required frequent lifting, 80 to 90 pounds, mopping, filling the ice cream case, keeping the store in order, assisting customers, and taking inventory.

Johnson's initial applications for benefits were denied in July of 1979. Her petitions for reconsideration were affirmed. Johnson petitioned for a consolidated hearing before an administrative law judge who likewise denied her application for benefits after a hearing. The Appeals Council adopted the decision of the administrative law judge and denied Johnson's request for review.

The administrative law judge, who found Johnson to be "an individual approaching advanced age, with a limited education and previous work experience in semi-skilled work," found that Johnson suffers from stasis dermatitis and incompetent varicose veins in both legs with brawny edema, high blood pressure, chronic obstructive pulmonary emphysema, obesity and aches, pains and limitations in motion due to degenerative arthritis. The ALJ concluded that none of Johnson's impairments, either singly or in combination with one another, either met or were the medical equivalent of any of the Listings in the Listing of Impairments found in Title II of the Social Security Act and, therefore, did not automatically qualify her as disabled. Johnson was fifteen pounds too light to meet the obesity requirement and the administrative law judge rejected Johnson's argument that the listing for chronic venous insufficiency, Listing 4.12,[2] may be satisfied by a showing of recurrent ulceration that was not persistent. The administrative law judge assumed, *arguendo*, that Johnson was correct in treating the "recurrent or persistent ulceration" in the disjunctive and found that Johnson's problems were not frequent enough to be considered recurrent. The medical evidence demonstrated that Johnson had experienced ulceration once in the year 1949, once in 1967, and once in 1979. The administrative law judge held that a pattern of recurrence separated in one case by 21 years and in another case by 12 years did not meet the recurrence tests of Listing 4.12.

The administrative law judge found that Johnson was able to return to her job as a bus attendant and further determined that there was no conflict between the assessments of Drs. Strange, Browning, Ray, Lord, and Tucker. Although Dr. Strange found that Johnson could not bend, stoop, push, pull or climb, his examination was made in June of 1979 when Johnson was still suffering from ulcerations. By January of 1980, Dr. Lord found that she was only somewhat limited. By June of 1980, with the ulceration healed, Dr. Browning found that Johnson could return to her job as a bus attendant. Noting that the impairments found by Drs. Ray and Tucker did not preclude Johnson from working a split-shift, the administrative law judge concluded that the doctors' evaluations did not conflict.

The administrative law judge also found that Johnson's complaints of pain and shortness of breath were not supported with medical evidence. Although the record reflects that Johnson complained of severe pain, the medications she used and her activities were not consonant with a finding that she was in severe pain. The X-rays of her knees, which showed mild changes caused by osteoarthritis, did not support her claims of severe pain when climbing or standing for longer than two to four hours. Her complaint of shortness of breath was not accepted by the administrative law judge since the breathing tests showed, at the most, a moderate impairment.

---

**2.** 20 C.F.R. Appendix 1, § 4.12:

   "4.12 *Chronic venous insufficiency* of the lower extremity with incompetency or obstruction of the deep venous return, associated with superficial varicosities, extensive brawny edema, stasis dermatitis, and recurrent or persistent ulceration which has not healed following at least 3 months of prescribed medical or surgical therapy."

After Johnson filed for review in the district court, the case was assigned to a magistrate who reversed the finding of the administrative law judge and held that Johnson could not return to her job as a bus attendant. Accepting the testimony of Johnson that in a five-to-six-hour work day she walked or stood four and one-half hours, the magistrate held that the job required a good deal of walking or standing, as well as lifting and pushing the weight of a child, bending, and frequent climbing and descending. The magistrate held that the medical evidence showed that Johnson could not perform these duties. Drs. Strange, Tucker and Ray all indicated that Johnson could only walk or stand for two hours in an eight-hour day. Moreover, Dr. Strange found that Johnson could not bend, push, pull, or climb and Dr. Lord found her to be "somewhat limited."

The magistrate discounted the testimony of Dr. Browning because he was a consulting physician who examined the claimant only once. Following the decisions of *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir. 1981) and *Allen v. Weinberger*, 552 F.2d 781 (7th Cir.1977), the magistrate found that the opinions of the treating physicians are entitled to greater weight than those of the consulting physicians.

The magistrate applied the medical-vocational guidelines found at 20 C.F.R. Subpart P, Appendix 2, the "grid" and found that Johnson was not disabled. Although the administrative law judge had not made a specific finding of transferable skills, based upon her jobs at the dry cleaner and ice cream parlor, the magistrate held that she had acquired such transferable skills as the ability to do simple mathematical functions to account for money, to relate to people, to use independent judgment and to operate a cash register. The magistrate found that, when Johnson's residual functional capacity for sedentary work was considered, together with her age, education and previous work experience, application of the grid dictated a finding of not disabled.

## II.

■ Our initial inquiry is whether the magistrate erred by applying the grid. For the reasons given below, we are compelled to hold that, when the Secretary had not applied the grid, application of the grid by the courts exceeds the scope of judicial review and denies claimants their rights to present evidence relating to their own abilities and to offer evidence that the guidelines do not apply to them.

■ Judicial review of the administrative law judge's decision is limited to an evaluation of that decision. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary ... the court shall review only the question of conformity with such regulations and the validity of such regulations." 42 U.S.C. § 405(g) (1983). A trial *de novo* is improper. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982). Once the magistrate concluded that substantial evidence did not support the Secretary's finding that Johnson could return to her past relevant work his scope of review terminated. By proceeding further and determining that Johnson had transferable skills, a determination which the Secretary has found difficult to make, the magistrate usurped a function of the Secretary which was critical to the outcome of Johnson's claim. The regulations noted that "[r]educed residual functional capacity (RFC) and advancing age are important factors associated with transferability because reduced residual functional capacity limits the number of jobs within an individual's physical or mental capacity to perform, and advancing age decreases the possibility of making a successful vocational adjustment." [1982–1983 Transfer Binder] Unempl.Ins.Rep. (CCH) ¶ 14,168. Assuming that Johnson was approaching advanced age, with a limited education, with previous work experience in semi-skilled work, and with a residual functional capacity limited to sedentary work, transferability is the determinative factor. Johnson would be disabled if her skills were not

transferable; conversely, she would not be disabled if they were transferable. 20 C.F.R. Appendix 2, Rules 201.10, 201.11. Further, the magistrate's determination was not only beyond his authority and usurped the administrative law judge's fact-finding function, but it also denied Johnson her rights to present and rebut evidence guaranteed her by 20 C.F.R. Appendix 2, § 200.00(a). Johnson lost her right to present evidence about the skills required by her previous work and the transferability of those skills when the magistrate made the determination based on the record before him. We conclude, therefore, that application of the grid by the magistrate when it had not been initially applied by the Secretary was improper.

### III.

■ Our second inquiry is whether the decision of the Secretary was supported by the evidence. Our standard of review is the same as that of the district court pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). *Davis v. Califano,* 603 F.2d 618, 625 (7th Cir.1979). The decision of the district court is not subject to review under the "clearly erroneous" standard of Fed.R. Civ.P. 52(a) because the findings of fact in question are those of the Secretary and not of the district court. *McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir.1980). We must uphold the Secretary's factual determinations if they are "supported by substantial evidence" based on the record as a whole. *Davis,* 603 F.2d at 625. Factual findings of the Secretary are conclusive if they are supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir.1977). To establish entitlement to benefits under the Social Security Act, the claimant must prove, using medically acceptable clinical and laboratory findings, that she has become unable to engage in substantial gainful activity by reason of a physical or mental impairment. *Johnson v. Weinberger,* 525 F.2d 403, 407 (7th Cir.1975). If there is a conflict in evidence, the burden is on the claimant to prove that she meets the eligibility requirements. *Id.*

■ After reviewing the evidence, we hold that Johnson has failed to meet her burden of proof. Initially, the evidence demonstrates that Johnson was unable to establish medically an impairment or combination of impairments through medical testimony which met or qualified for a finding of equivalency to any of the Listings in the Listings of Impairments found in Title II of the Social Security Act. Although Johnson is somewhat obese, she does not meet the weight requirement of obesity in Listing 10.10. Further, Johnson's intermittent "popping" veins do not satisfy the requirements of Listing 4.12. While Johnson's problem with her veins may be disturbing, her own testimony showed that the resulting ulcerations generally healed within one week. She has had only three serious episodes: once in 1949, once in 1969, and once in 1979. Such a pattern of recurrence simply does not meet the recurrence test of 4.12.

Further, the magistrate erred in his determination that Johnson could not return to her job as a bus attendant. The administrative law judge, apparently characterizing the bus attendant job as sedentary, found that, because Johnson worked a split-shift at 1PS, the capacities found by Drs. Ray and Tucker would allow her to perform this type of work. We find no basis in the record for finding that the job was not sedentary. Although Johnson established that the job involved walking and standing, she did not establish that the amount of walking and standing exceeded the guidelines describing sedentary work. The regulations recognized that walking and standing are required in sedentary work.

"(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which

involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. Sub-Part P, § 404.1567(a). Based upon our narrow scope of review of an administrative decision of this nature, we hold that there is sufficient evidence in the record that "a reasonable mind might accept as adequate," *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427, to support the administrative law judge's decision in this case.

The decision of the Secretary is AFFIRMED.