**DAVIESS COUNTY HOSPITAL,**
Plaintiff-Appellee,

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services,**
Defendant-Appellant.

No. 85–2407.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1986.
Decided Jan. 20, 1987.

Algenon Morbley, Asst. U.S. Atty., John D. Tinder, U.S. Atty., Indianapolis, Ind., for defendant-appellant.

L. Richard Gohman, Hall, Render, Killian, Heath & Lyman, Indianapolis, Ind., for plaintiff-appellee.

Before HARLINGTON WOOD, JR., CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The Secretary of Health and Human Services appeals from a district court order reversing a decision of the Provider Reimbursement Review Board ("PRRB") and remanding for calculation of Medicare provider reimbursement to appellee Daviess County Hospital ("the Hospital"). The PRRB concluded that the Hospital had failed to keep adequate records of the physical therapy services it provided and therefore was not entitled to reimbursement for the costs of therapy services rendered to Medicare patients. The district court held that reimbursement was due because, despite deficiencies in the Hospital's records, it was not disputed that some therapy services were performed for which reasonable compensation could be determined. For the reasons set forth below, we reverse the district court and remand for entry of judgment for the Secretary.

I.

Medicare is a federally funded health insurance program established under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* Part A of Title XVIII establishes a plan that pays hospitalization expenses for persons 65 years of age or older or suffering from certain disabilities. The institutions that furnish health care services under Part A, known in the parlance of Medicare as "providers", apply to the Secretary for reimbursement of the cost of care provided to Medicare patients. Providers may apply for reimbursement either directly or, upon conclusion of an agreement with the Secretary, indirectly through an intermediary. 42 U.S.C. § 1395h. Requests for reimbursement are made in the form of "cost reports" that each provider must file annually. 42 C.F.R. § 405.406(b).

Daviess County Hospital is a 136–bed general short-term hospital located in Washington, Indiana. Since 1971, the Hospital has operated its physical therapy department under an independent contract with American Therapeutic Services, Inc. ("ATS"). Under this contract ATS furnishes physical therapy services to the Hospital's patients (including those covered by Medicare) in exchange for 55 percent of the gross revenues of the Hospital's physical therapy department. The principals of ATS, Marlo and Beverly Chilman, husband and wife, are licensed physical therapists. In addition to working at the Hospital themselves, the Chilmans employed several part-time aides and assistants and at least one part-time therapist in the department during the period in question.

Like most Medicare providers, the Hospital applies for reimbursement through an intermediary, in this case Blue Cross and Blue Shield Association/Mutual Hospital Insurance, Inc. ("Blue Cross"). During an audit of the Hospital's 1977 cost report, Blue Cross concluded that the Hospital had failed to maintain records of physical therapy services in accordance with procedures

promulgated by the Secretary. Specifically, Blue Cross determined that the Hospital had not properly calculated its cost limitation for physical therapy services provided by an outside contractor under 42 C.F.R. § 405.432, and had not maintained a "daily log" of hours of service provided, as is required by § 1417A of the Secretary's Provider Reimbursement Manual. Because the auditors did not review the Hospital's 1977 cost report until early in 1979, Blue Cross decided not to require the Hospital to submit a daily log for 1977 (or for 1978, for which year the auditors found the Hospital's records similarly deficient). Blue Cross instead calculated reimbursement for 1977 and 1978 based on time estimates made by the Chilmans.

Because it had found the Hospital's time records deficient, Blue Cross warned the Hospital during the audit of the 1977 cost report that the Hospital was not in compliance with the record-keeping requirements of the Provider Reimbursement Manual. Acknowledging this warning in a letter to Blue Cross on March 12, 1979, the Hospital's administrator promised that the Hospital would "begin maintaining a daily log identifying all information required by Section 1417 of [the Manual]."

When Blue Cross audited the Hospital's 1979 cost report, it discovered that daily logs were not in fact kept for that year. The Hospital made two attempts to supplement its report with additional records, but Blue Cross remained dissatisfied, and ultimately decided to disallow all reimbursement to the Hospital for physical therapy services for 1979. When an audit of the Hospital's cost report for 1980 resulted in a similar determination, Blue Cross denied all reimbursement for that year as well. A total of $97,959.00 in claimed reimbursement was disallowed. The Hospital appealed Blue Cross' disallowances to the PRRB under 42 U.S.C. § 1395oo (a). A three-member panel of the PRRB affirmed the disallowances, with one member dissenting.[1]

After the Secretary declined to modify the decision of the PRRB, the Hospital sought review in the district court under 42 U.S.C. § 1395oo (f)(1). The district court found the PRRB's decision to be "arbitrary and not supported by the evidence." The court found it undisputed that "substantial therapy services were rendered during the years in question" for which the Hospital had submitted "considerable secondary evidence," and that complete disallowance had "an unwarranted punitive impact on [the Hospital]." *Memorandum Entry* of June 6, 1985, at p. 5. The district court reversed the PRRB and remanded for calculation of a reasonable reimbursement sum. This appeal by the Secretary followed.

## II.

We must dispose of two preliminary matters before proceeding to the merits of the Secretary's claim. The first concerns this court's jurisdiction. The order appealed from remanded this case to the PRRB for further proceedings, specifically the calculation of "reasonable reimbursement" for physical therapy services rendered to Medicare patients during the years 1979 and 1980. Ordinarily an order remanding a case to an administrative agency for further proceedings is not a "final decision" subject to immediate appeal under 28 U.S.C. § 1291. *In re Riggsby*, 745 F.2d 1153, 1156 (7th Cir.1984). In determining whether a particular order is "final" for purposes of appeal, however, this court must apply a practical, rather than technical, construction to that term. *See, e.g., Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152, 85 S.Ct. 308, 310–11, 13 L.Ed.2d 199 (1964).

Both the Secretary and the Hospital agree that we have jurisdiction, although their proffered reasons differ. The Secre-

1. The dissenting member of the PRRB panel, while agreeing with the majority that the Hospital's records were inadequate, felt that some reimbursement is required where costs are undisputably incurred "no matter how inadequate the timekeeping records may be." Provider Reimbursement Review Board Hearing Decision, July 22, 1983, at p. 9 (dissenting opinion of Board Member Dudgeon).

tary urges us to rely on the "collateral order" doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). *See also Cohen v. Perales*, 412 F.2d 44, 48–49, *on rehearing*, 416 F.2d 1250 (5th Cir.1969), *rev'd on other grounds, Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the Supreme Court observed in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978), however, one of the requirements for finding an order to be "final" under the *Cohen* doctrine is that the order resolve an issue "completely separate from the merits of the action...." The order now on appeal resolved the issue of the Hospital's entitlement to Medicare provider reimbursement, an issue at the core of the underlying lawsuit. We therefore cannot find the district court's order appealable under the *Cohen* rule.

Although we cannot apply the "collateral order" rule directly, the considerations behind the finality requirement still favor finding the district court's order appealable under 28 U.S.C. § 1291. In *Cohen* itself the Supreme Court stated that the purpose of the finality requirement "is to combine in one review all stages of the proceeding that *effectively may be reviewed* and corrected if and *when final judgment results.*" 337 U.S. at 546, 69 S.Ct. at 1225 (emphasis added). In the present case such unitary review of all issues is not possible because of the statutory limitations on federal court review of administrative decisions of this type. The district court's order, practically construed, is clearly "final" to the Secretary because the applicable judicial review statute will bar him from raising the record-keeping issue in any court proceedings that follow the administrative remand.

Appeals to district courts from PRRB orders are governed by 42 U.S.C. § 1395oo (f)(1), which allows the Secretary to modify those orders but provides for judicial review only if it is initiated by Medicare providers. If this case were returned to the PRRB now and the PRRB determined that a certain sum should be reimbursed in accordance with the district court's order, the Secretary would be unable to appeal the PRRB's action and therefore would be barred from presenting his claim that the Hospital has no right to any reimbursement. In other words, dismissal of this appeal would "have the practical effect of denying later review." *United Steelworkers of America v. Union Railroad Co.*, 648 F.2d 905, 909 (3rd Cir.1981). The district court's order was "final" to the Secretary because it would result in no further proceeding from which the Secretary could appeal. Accordingly, we conclude that this court has jurisdiction over this appeal under 28 U.S.C. § 1291.[2]

The second preliminary matter concerns this court's standard of review of factual findings made below. The Hospital contends that this court must apply Rule 52(a), Fed.R.Civ.P., to the *district court's* factual findings and thereby uphold those findings unless they are clearly erroneous. The suggestion that Rule 52(a) has any application to this administrative review proceeding is patently incorrect. This court owes no deference to the district court's factual findings because the district judge made none. The fact finder in this case is the Secretary (acting through the PRRB), and both the district court and this court owe the *Secretary's* findings deference. In that respect both courts apply the same standard of review. *See generally Johnson v. Heckler*, 741 F.2d 948, 953 (7th Cir.1984). This court therefore reviews the district court's determinations *de novo* as

**2.** In *St. Mary's Hospital Medical Center v. Heckler*, 753 F.2d 1362 (7th Cir.), *cert. denied*, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985), the Secretary appealed a district court order that reversed a PRRB judgment and remanded for recalculation of reimbursement based on specific accounting methods that had been dis-

approved by the PRRB. This court reversed the district court without commenting on the finality of the district court's order. We see no distinction between that situation and the instant case for purpose of jurisdiction under 28 U.S.C. § 1291.

questions of law. The Secretary's decision may not be disturbed (by this court or the district court) unless it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law; contrary to constitutional right, power privilege or immunity; exceeding of statutory jurisdiction, or falling short of statutory right; reached in violation of established procedure; or unsupported by substantial evidence. 5 U.S.C. § 706; *Bedford Medical Center v. Heckler,* 766 F.2d 321, 323 (7th Cir.1985).

### III.

Although we have devoted some attention to our standard of review of the Secretary's factual findings, this is not a case in which factual disputes are of great significance. The Secretary does not claim that *no* therapy services were performed and does not argue that the costs the Hospital reported are unreasonably large for the therapy services that the Hospital claims to have rendered to Medicare patients. For its own part, the Hospital does not really contend that its records fully satisfied § 1417A of the Provider Reimbursement Manual. The dispute before us centers on the relationship between the Secretary's record-keeping regulations (and his interpretation of them) and the Medicare statute itself. The Secretary maintains that the record-keeping rules do not exceed statutory boundaries and that complete disallowance of reimbursement is specifically authorized by the Medicare statute under circumstances such as these. The Hospital argues that the Medicare statute requires reimbursement where a provider has shown that reasonable costs *are* incurred, and that the Secretary has interpreted the record-keeping regulations in a manner contrary to the statute.

The Medicare statute authorizes reimbursement to providers of "the reasonable cost of such services" as are provided to Medicare patients (or of the provider's "customary charges" for those services, if lower). 42 U.S.C. § 1395f(b)(1). "Reasonable cost" is defined at 42 U.S.C. § 1395x(v)(1)(A):

The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs....

The subsection goes on to afford the Secretary wide latitute in prescribing regulations governing the process of determining reasonable costs. It is further provided in § 1395x(v)(5)(A) that reimbursement for costs of therapy services furnished by an outside contractor may not exceed those the provider would incur if its own employees provided the services.

As part of his responsibility in administering the cost determination process, the Secretary has promulgated regulations governing the submission of annual provider cost reports and the records that must support them. The record-keeping regulations carry out a specific provision of the Medicare statute, 42 U.S.C. § 1395g(a), which prescribes periodic payments to providers and goes on to direct that "no such payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider...." The regulations require as a general matter that providers "maintain sufficient financial records and statistical data for proper determination of costs payable under the program," allowing for the use of "[s]tandardized definitions, accounting statistics and reporting practices" widely used in the health care industry. 42 C.F.R. § 405.406(a). More specifically, the data submitted in support of a request for reimbursement must be "capable of verification by qualified auditors." 42 C.F.R. § 405.-453(a). Accuracy and sufficiency of detail are emphasized:

Adequate cost information must be obtained from the provider's records to support payments made for services rendered to beneficiaries. The requirement of adequacy of data implies that the data

be accurate and in sufficient detail to accomplish the purposes for which it is [*sic*] intended. Adequate data capable of being audited is [*sic*] consistent with good business concepts and effective and efficient management of any organization, whether it is operated for profit or on a nonprofit basis. It [*sic*] is a reasonable expectation on the part of any agency paying for services on a cost-reimbursement basis.

42 C.F.R. § 405.453(c).

The most detailed record-keeping and reporting requirements set by the Secretary for therapy services are found in § 1417 of the Provider Reimbursement Manual. In 1979 the Manual addressed provider record-keeping in § 1417A:

> *Data to be Maintained by Provider.* Providers must maintain sufficient data in its [*sic*] records to support the statements submitted with its [*sic*] cost report, and *the data must be reflected in a manner so as to provide an adequate audit trail.* These records, *whether in the form of a daily log or similar daily records*, must be kept up to date and be available at all times for review by the intermediary. . . .

(Emphasis added). Section 1417A listed seven specific types of data required for each therapy service claim, including the date, the name of the therapist(s) involved, the therapeutic procedure followed, the provider's charge for the service and the hours of service rendered.[3] These records were to be kept for all patients, whether covered by Medicare or not. Section 1417B discusses the information that must be submitted in cost reports.

## IV.

■ Throughout these proceedings the only aspect of the Hospital's record-keeping that has been consistently challenged by Blue Cross (and by the Secretary) has been the recording of time worked on each patient by ATS therapists. Blue Cross concluded that inaccuracies and inconsistencies in the therapy department's time records demonstrated that they were not the fruits of a contemporaneous time log kept on a daily basis and that they could not be verified by audit. To the extent that the Hospital challenges the PRRB's finding to that effect, we find it amply supported by the record.

Blue Cross initially became suspicious of the Hospital's therapy time records when it noted that there was little correlation between the number of hours the therapists worked and the number of patients they treated, and that the number of hours certain therapists worked on particular days of the week never varied over the entire year. Further examination revealed that Marlo Chilman claimed to have worked on all 365 days of 1979, and that both he and his wife worked their normal hours on all holidays.[4] After records were initially corrected, Marlo Chilman still claimed to have worked six hours on "November 31, 1979", a day that does not exist. The Hospital's first "corrected" submission no longer claimed any holiday hours.

---

**3.** The Provider Reimbursement Manual is also known as "Health Insurance Manual 15," or "HIM–15". It can be found at 1 *Medicare and Medicaid Guide* (CCH) Para. 5849D–67. The version of § 1417A quoted in the text became effective in October of 1979; prior to that time the introductory paragraph stated that "[p]roviders must maintain sufficient data in form of a daily log (or similar daily record) to support the statements submitted with the cost report. The data in the daily log or record must be reflected in a manner so as to provide an adequate audit trail. . . ."

In 1982, § 1417A was again revised. The 1982 revision retained the language regarding a "daily log or (similar daily record)" and an "adequate audit trail", but eliminated the seven specific categories of required data. In their place § 1417A now requires simply that the records "contain sufficient information to allow evaluation of the reasonableness of the costs incurred for therapy services furnished under arrangements."

**4.** When questioned about claimed holiday hours by auditors, Mr. Chilman conceded that he had not actually worked those hours, but rather had been on call. PRRB Hearing Record at 1451.

Even after the Hospital attempted to construct a time log from other sources,[5] Blue Cross auditors still found two critical defects in the time records. One problem was that the therapy department's time sheets were signed by only one therapist, usually Marlo Chilman, although the time sheets showed that both Marlo and Beverly Chilman worked on most days. An equally telling inconsistency appeared in the therapy department's daily appointment journal, which listed five hours of appointment time per day (divided into half hour periods). Nevertheless, each therapist claimed to have spent more than five hours in the therapy department on most days. The Blue Cross auditors concluded that these records would not support a determination that even half of the therapists' claimed hours had been worked. The PRRB found that the Hospital had not fulfilled its burden under the record-keeping regulations (including § 1417A of the Manual), and that the Hospital had actual notice of those requirements.[6] We find that the inaccuracies and inconsistencies discussed above constitute substantial evidence that the Hospital failed to keep a "daily log" or its equivalent.

The Hospital's real dispute with the Secretary, however, does not concern its compliance (or lack thereof) with the daily record-keeping requirements, but rather goes to the validity of those requirements, and especially of § 1417A of the Manual. The Hospital contends that a complete denial of reimbursement based on the Secretary's "strict" adherence to the daily log requirement violates the statutory mandate

that Medicare providers be reimbursed for such "reasonable costs" as they incur in treating covered patients. The Hospital insists that it demonstrated before the PRRB by means of secondary evidence that the costs it claimed were "reasonable" for the treatments provided, and that the paramount statutory principle of reasonable cost reimbursement therefore requires payment.

The Hospital's attack is primarily directed at § 1417A of the Provider Reimbursement Manual, which assertedly violates the Medicare statute's reasonable cost rule by barring viable methods of proving costs other than the use of contemporaneous daily records. The Manual is not itself a regulation; it is published by the Health Care Financing Administration to instruct providers in the application of reimbursement regulations. As the Administration is an arm of the Secretary, the Manual is best viewed as an administrative interpretation of regulations and corresponding statutes, and as such it is entitled to "considerable deference" as a general matter. *See Bedford Medical Center v. Heckler*, 766 F.2d 321, 323 (7th Cir.1985). Nevertheless, such deference is not appropriate where the plain meaning of a statute or regulation rules out the interpretation expressed in a provision of the Manual. *Community Hospital of Indianapolis v. Schweiker*, 717 F.2d 372, 375 (7th Cir.1983).

The Hospital seems to suggest that the reasonable cost requirement is a ceiling: any figure below a reasonable amount for the work done should be allowed. The

---

**5.** During its initial audit for 1979, Blue Cross was unable to determine from the records submitted which patients treated were covered by Medicare, what therapeutic procedures were provided to each patient, how much the Hospital charged each patient and the basis for computation of that charge. Corrected and resubmitted records led Blue Cross to the same result. Ultimately, the Hospital attempted to construct a therapy log through use of daily appointment schedules, individual patient medical records, charge slips and the like. This procedure provided much of the information that earlier submissions had lacked, but still failed to satisfy Blue Cross.

**6.** The Hospital's assertion that it was not properly notified of the daily log requirement of § 1417A of the Manual is absurd. The revision of the Manual that announced the new limitations on reimbursement for contract therapy services and the daily log requirement was mailed to the Hospital and other Medicare providers in 1975. It makes no difference that the auditors notified "only" notified the Hospital's administrator in 1979 that the Hospital's records were inadequate. Any failure by the Administrator to advise interested Hospital personnel is not the fault of Blue Cross or of the Secretary, and does not effect the validity of the Manual.

secondary evidence submitted by the Hospital included estimates by expert witnesses of the number of hours of professional therapy services that reasonably would have been required to render the number of "treatments" actually given by the Hospital's therapy department, the treatment figure having been obtained from individual patient records. The Hospital contends that its reported costs were reasonable because the number of hours it actually claimed were less than the number estimated to be reasonably necessary by its experts.

To argue, as the Hospital does, that the Secretary should pay any claim less than or equal to an estimated "reasonable" figure is to ignore, rather than to advance, the purpose of the Medicare statute's reasonable cost requirement. The statute itself defines reasonable cost as "the cost *actually incurred,* excluding therefrom any part of incurred cost found to be unnecessary...." 42 U.S.C. § 1395x(v)(1)(A) (emphasis added). The legislative history of the reasonable cost provision confirms that Congress' objective in setting up the Medicare reimbursement process was not to establish minimal or estimated levels of reimbursement, but rather to determine actual costs as closely as possible in order to avoid shifting the expense of services between Medicare and non-Medicare patients. *See* S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 1976.[7] The regulations carry out the objective of accurate cost determination by requiring that records be "capable of verification by qualified auditors." 42 C.F.R. § 405.453(a).

In order to fulfill his Congressional mandate to make accurate determinations of the actual costs of Medicare-covered services, the Secretary specified in § 1417A of the Manual certain categories of information that providers had to furnish in their cost reports. That § 1417A requires these records to be kept in the form of a "daily log" or its equivalent is entirely in accord with the Medicare statute's actual cost requirement and with Congress' insistence on accurate determinations of actual cost. Time records kept contemporaneously with the hours worked are more likely to be accurate than those assembled from memory at a later time or pieced together from records kept for other purposes. Accordingly, we find the contemporaneous record requirement set forth in § 1417A of the Manual to be consistent with the Medicare statute and its attendant regulations.

■ The consequence of failure to provide auditable records is also specifically provided for in the Medicare statute at 42 U.S.C. § 1395g(a). Ignored by the Hospital and not mentioned in the district court's opinion, § 1395g(a) directs that "no [Medicare reimbursement] payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider...." This is not the language of an administrative regulation or agency interpretation that this court must reconcile with a governing statute. It is the Medicare statute itself that allows the Secretary to deny reimbursement when a provider submits inadequate records. Indeed, the plain language of § 1395g(a) seems to *require* that the Secretary deny reimbursement unless he gets the information he asks for.[8] The Secre-

---

7. "Although payment may be made on various bases the objective, whatever method of computation is used, will be to approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the program so that under any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program."

8. Whether the Secretary *must* deny reimbursement if provider records are inadequate is, of course, not an issue before us in this case. Nevertheless, the plain language of 42 U.S.C. § 1395g(a) at least suggests that Blue Cross, rather than denying the Hospital its rightful reimbursement for 1979 and 1980, actually did the Hospital a favor by reimbursing expenses for 1977 and 1978, years for which Blue Cross auditors also found the Hospital's records insufficient.

tary's decision to deny reimbursement does not contravene the Medicare statute; rather, it follows one of that statute's own provisions.

The Hospital finally argues that disallowance of reimbursement contravenes the Medicare statute's prohibition of shifting costs from Medicare to non-Medicare patients, or *vice versa*. *See* 42 U.S.C. § 1395x(v)(1)(A).[9] The Hospital asserts that if the Secretary's denial of reimbursement is upheld, the Hospital will pass along the uncompensated therapy costs to patients not covered by Medicare. At oral argument, counsel for the Hospital claimed that the Hospital would be required to shift the losses caused by the Secretary's denial of reimbursement to non-Medicare patients in order to stay in business. In support of its contention that avoidance of cost-shifting mandates reimbursement, the Hospital cites *St. John's Hickey Memorial Hospital v. Heckler*, 599 F.2d 803, 812 (7th Cir.1979), in which this court upheld a denial of reimbursement to a Medicare provider for nursing education expenses. The court held in part that disallowance of reimbursement for nursing education costs attributable to Medicare patients would shift that part of the educational costs to non-Medicare patients, and therefore would violate the anti-cost-shifting provision of 42 U.S.C. § 1395x(v)(1)(A).

The Hospital's application of *St. John's Hickey* and the anti-cost-shifting provisions of § 1395x(v)(1)(A) to this case would have a great deal more force if the Secretary's denial of reimbursement was based on something other than inadequacy of records, a basis for which the Medicare statute specifically authorizes denial. The anti-cost-shifting provision of the Medicare statute directs that *regulations* promulgated by the Secretary not shift costs but cannot be read to override the Secretary's *statutory* authority under 42 U.S.C. § 1395g(a) to deny reimbursement requests not supported by sufficient cost records. The record-keeping requirements, promulgated in order to promote accurate costs determination, are themselves intended to aid in avoiding cost-shifting; denial of reimbursement under · § 1395g(a) is simply Congress' chosen method for enforcement of the record-keeping and cost-reporting rules.

## V.

The decision of the Secretary disallowing Medicare reimbursement to the Hospital for physical therapy costs claimed for 1979 and 1980 was neither arbitrary nor capricious and was not contrary to the language or purpose of the Medicare statute. Accordingly, the judgment of the district court is REVERSED.

---

9. After defining "reasonable cost", § 1395x(v)(1)(A) goes on to authorize the Secretary to prescribe regulations to govern the cost determination process and states that:

> [s]uch regulation shall ... take into account both direct and indirect costs of providers of services ... in order that, under the methods of determining costs, the necessary costs of

efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs....