**Lorenzo CLAUDIO, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 87 C 6486.**

United States District Court, N.D. Illinois, E.D.

June 13, 1988.

Agustin G. Garcia, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., James J. Kubik, Asst. U.S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge.

On July 22, 1987 Lorenzo Claudio brought this action for judicial review of the decision of the Secretary of Health and Human Services (the "Secretary") to deny him disability insurance benefits and supplemental security income.

In March 1986 Mr. Claudio applied for disability insurance benefits and supplemental security income. On December 18, 1986, ALJ Richard Murphy held a hearing

---

on Mr. Claudio's application. On March 31, 1987 the ALJ denied Mr. Claudio's claim and found that Mr. Claudio had the residual functional capacity to perform medium exertional work, including his former job.

Mr. Claudio submitted additional evidence on his condition.

On June 19, 1987 the Appeals Council decided that Mr. Claudio's additional evidence did not justify changing the ALJ's decision. The Appeals Council therefore refused to remand Mr. Claudio's claim.

## BACKGROUND FACTS

Mr. Claudio asserted before the ALJ that he became disabled on August 2, 1983, due to high blood pressure, a heart condition and arthritis. Mr. Claudio was fifty-seven at the time of his hearing. He worked as a casket trimmer from 1967 to 1982. (Tr. 43–46). In 1982 he lost his job, because the Berner Casket Company went out of business.

Mr. Claudio testified that he 1) had a heart condition which made him dizzy; 2) had chest pains three or four times a day; 3) had arthritis and headaches. He said that he could walk only half a block before he got dizzy and could sit only 30 minutes because his back hurt.

From December 9 to December 12, 1985 Mr. Claudio was hospitalized at Mary Thompson Hospital. His final diagnosis was chest pain and unstable angina pectoris. X-rays revealed that Mr. Claudio had normal heart and lungs and moderate, degenerative osteoarthritic changes in this thoracic spine. An EKG revealed sinus tachycardia and non-specific ST–T changes.

Dr. Bhagwan Jain, Mr. Claudio's treating physician, reported that on April 19, 1986 he examined Mr. Claudio. At that time he diagnosed angina pectoris and hypertension. Mr. Claudio's blood pressure was 170/110. Mr. Claudio reported that every day he experienced 15 minutes of precordial and anterior chest pains, usually after exertion. Nitroglycerin relieved Mr. Claudio's pain. Dr. Jain noted that, because of dizziness, Mr. Claudio did not take a tread-mill stress test. Dr. Jain restricted Mr. Claudio to sitting jobs.

On September 5, 1986 Dr. Rana performed a consultative examination. He diagnosed controlled high blood pressure, chest pain which could be cardiac in origin, degenerative arthritis and poor vision. There was no evidence of congestive heart failure or signs of acute inflammation or limitation of movement. Mr. Claudio's corrected vision was 20/25 in each eye and his blood pressure was 150/90. An x-ray of the lumbosacral spine revealed moderate degenerative changes and scoliosis deformity with convexity towards the left side.

On September 11, 1986 Mr. Claudio was unable to complete a stress test because his right leg limp prevented him from keeping pace with the treadmill.

At the December 18, 1986 hearing Dr. Bruce Brundage testified as a medical advisor. He said that he could not determine whether Mr. Claudio's condition met or equalled a listing in Appendix 1 of Subpart P of Regulations No. 4, because, although Mr. Claudio's symptomology was consistent with a finding of heart disease, there was no lab data or other documentation that his heart caused these symptoms. Dr. Brundage noted that the Mary Thompson Hospital X-ray and EKG were normal.

Dr. Brundage refused to make a diagnosis on the basis of purely historical evidence, rather than on "objective findings of cardio-vascular disease." Dr. Brundage opined that the September 11, 1986 uncompleted stress test did not indicate heart disease, since Mr. Claudio did not finish the test. Dr. Brundage noted, however, that Mr. Claudio's dizziness on April 19, 1986 was consistent with Dr. Jain's diagnosis of angina pectoris and hypertension.

After the hearing, from August 13 to August 21, 1986 Mr. Claudio was hospitalized at Saint Mary of Nazareth Hospital Center. He was diagnosed with chest wall pain, hypertension and alcoholism. (Tr. 168). Cardiac enzymes were slightly high but his isoenzymes were negative for a heart attack. (Tr. 171). A chest x-ray revealed minor cardiac hypertrophy. An echocardiogram showed slight left atrical

enlargement and questionable minimal post-pericardial effusion. A MUGA scan indicated left ventricular ejection fraction of 50%. Mr. Claudio's stress test showed: poor exercise tolerance, exaggerated hypertensive response, and no evidence of ischemia.

A radiology report dated August 16, 1986 notes equivocal evidence of inferior and medial decreased activity on stress not seen on redistribution. Mr. Claudio's final diagnosis was chest wall pain and hypertension.

On September 23, 1986 a physician (whose signature is illegible, Tr. 159) made an RFC assessment. He stated that Mr. Claudio could occasionally lift 100 pounds or more, frequently lift or carry 50 pounds or more, and stand/walk for 6 hours per day.

On September 29, 1986 Dr. Pilapil reviewed the medical evidence and diagnosed controlled high blood pressure and degenerative arthritis (Tr. 100). She opined that Mr. Claudio had the RFC to occasionally lift 100 pounds or more, frequently lift 50 pounds, and stand/walk through a 6–8 hour day. Dr. Pilapil concluded that Mr. Claudio could perform a wide range of heavy work. (Tr. 101).

On January 3, 1987 Dr. Jain examined Mr. Claudio and reported 1) a diagnosis of angina pectoris, uncontrolled hypertension and severe arthritis; 2) blood pressure of 160/110; 3) reported daily or twice daily chest pain. Dr. Jain concluded that Mr. Claudio could sit two hours at a time, stand or walk one hour and occasionally lift up to 10 pounds. (Tr. 178).

On February 12, 1987 Dr. Brundage reviewed Dr. Jain's report of January 3, 1987. Dr. Brundage stated that Mr. Claudio's cardiac workup was not consistent with coronary artery disease and that he had "hyper-

tension and no other identifiable cardiac abnormality." Dr. Brundage concluded that Mr. Claudio's physical abilities were not affected because he had a 1) normal left ventricular function by MUGA and echocardiogram and 2) negative ECG treadmill stress test.

On February 22, 1987, (after the ALJ made his decision), Mr. Claudio was admitted to the hospital. (Tr. 10). He was diagnosed with unstable angina, chest wall pain, and hypertension. A medical report states that while Mr. Claudio had had hypertension for 10 years he had "had no complaints until approximately two days ago." Since then he had experienced pain lasting 3–4 minutes and vomiting.

A chest x-ray on February 22, 1987 revealed monitoring electrodes in the chest wall, minor cardiac hypertrophy, unremarkable·vessel shadows and clear lung fields. (Tr. 19).

On February 24, 1987 a chest x-ray showed 1) a normal-sized heart; 2) pleural thickening anteriorly on the left side; 3) no pulmonary infiltrates or pneumothorax; 4) a normal esophagus; 5) normal left ventricular contractility analysis; 6) normal perfusion and ventilatory lung imaging. (Tr. 21–24).

On February 27, 1987 Mr. Claudio was discharged with a diagnosis of: 1) probable viral syndrome; 2) hypertension; 3) episodes of nausea and chest pain. (Tr. 15). Mr. Claudio was given medication and a low-salt diet, but his activities were not restricted.

*The ALJ's Decision*

In making his determination that Mr. Claudio was not disabled, the ALJ followed the five-step inquiry specified in the Social Security Administration Regulations Nos. 4 and 16, 20 C.F.R. §§ 404.1520, 416.920.[1] In

---

**1.** The Regulations require the factfinder to consider the following in sequence:
  (1) Is the claimant presently unemployed?
  (2) Is the claimant's impairment "severe?"
  (3) Does the impairment meet or exceed one of a list of specific impairments?
  (4) Is the claimant unable to perform his or her former occupation?

  (5) Is the claimant unable to perform any other work within the economy?
  An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

this case the ALJ's inquiry focused on Step 4.

In finding that Mr. Claudio could perform his past relevant work the ALJ compared Mr. Claudio's subjective complaints with the objective medical evidence. The ALJ described Mr. Claudio's complaints as weakness, dizziness and chest pain resulting from heart disease. The ALJ then concluded that Mr. Claudio's cardiac complaints are not credible because they are not supported by the objective medical evidence. Specifically, the ALJ found that although Mr. Claudio has hypertension, there is no evidence of congestive heart failure or end organ damage. The ALJ rejected the conclusion of Dr. Jain, Mr. Claudio's treating physician, that Mr. Claudio has angina pectores and can perform only sedentary work, because Dr. Brundage, a consultative cardiologist, concluded that there were no medical signs of any cardiac abnormality except hypertension. The ALJ specifically found Dr. Brundage's opinion more credible than that of Dr. Jain.

The ALJ next found that Mr. Claudio's back and arthritis complaints were not credible because they were not supported by the objective medical evidence.

The ALJ also found, however, that Mr. Claudio "may have some cardiac symptoms such as fatigue, dizziness, and chest pains, but that these symptoms would only prohibit lifting in excess of 50 pounds." The ALJ therefore concluded that Mr. Claudio could perform medium exertional work.

Finally, the ALJ found that Mr. Claudio's past relevant work as a trimmer was at the medium exertional level because it required lifting of only 40 pounds. The ALJ therefore concluded that Mr. Claudio could perform his past relevant work.

### DISCUSSION

Mr. Claudio raises one issue in his request for review: whether the ALJ's decision that Mr. Claudio can perform his past relevant work is supported by substantial evidence. Specifically, Mr. Claudio contends that the ALJ erroneously found that Mr. Claudio's past relevant work required lifting of only 40 pounds and thus qualified as "medium" work under 20 C.F.R. §§ 404.1567(c), 416.967(c) (1987).

This court agrees that the ALJ made two errors in determining that Mr. Claudio can perform his past relevant work. First, substantial evidence does not support the ALJ's conclusion that Mr. Claudio's past relevant work required him to lift only 40 pounds and therefore qualifies as "medium" work. Second, in deciding whether Mr. Claudio could perform his past relevant work, the ALJ should have compared Mr. Claudio's present capabilities to the demands of that work.

*1. The Amount of Lifting Required by Mr. Claudio's Past Relevant Work.*

■ Substantial evidence is evidence which a "reasonable mind might accept as adequate to support a conclusion." *See Veal v. Bowen,* 833 F.2d 693, 696 (7th Cir.1987). A medium-exertional job is defined as a job requiring lifting of a maximum of 50 pounds with frequent carrying or lifting of weights of up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c) (1987).

The ALJ's only statement concerning Mr. Claudio's past relevant work was that it was at the medium exertional level, "not heavy, as counsel alleges, because the lifting maximum was 40 pounds." (Tr. 30, 32). Substantial evidence does not support this finding.

The evidence concerning Mr. Claudio's past job (as a trimmer of caskets) shows that as a trimmer he (1) sometimes lifted over 100 pounds; (2) frequently lifted over 25 pounds. Either requirement qualifies the trimmer job as heavy work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c)(d) (1987). Mr. Claudio testified that as a casket trimmer he (1) stood all day; (2) frequently lifted casket lids or "panels" weighing 40 pounds (Tr. 45, 46); (3) sometimes lifted entire, finished caskets weighing much more than 40 pounds (Tr. 53).

*Lauer v. Bowen,* 818 F.2d 636, 638 (7th Cir.1987) (quoting *Bauzo v. Bowen,* 803 F.2d 917, 920 n. 1

(7th Cir.1986)) (quoting *Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985)).

A disability determination report dated 9/29/86 states that, by Mr. Claudio's description, his trimmer work involved lifting over 100 pounds. (Tr. 102, 105). Finally, on Mr. Claudio's disability report, dated 3/17/86, he wrote that he lifted caskets weighing up to 300 pounds. Defendant points out that on the same disability report Mr. Claudio also wrote that he "had a truck to pull them (the caskets) with." Defendant argues that this last statement undercuts Mr. Claudio's claim to lifting entire caskets. This court disagrees with the defendant's interpretation of Mr. Claudio's disability report. Mr. Claudio made his statements in response to a question concerning lifting *and* carrying, *i.e.* "describe below what was lifted and how far it was carried." (Tr. 115). Mr. Claudio's response suggested that he lifted whole caskets, but did not carry them because he had a truck to pull them with. This interpretation is supported by the rest of the disability report. For example, below Mr. Claudio's written statements he checked over 100 pounds for "heaviest weight lifted" and "over 50 lbs." for "weight frequently lifted/carried." (Tr. 115).

This court finds therefore that substantial evidence does not support the ALJ's conclusion that Mr. Claudio's past work did not require him to lift more than 40 pounds.

### 2. *The ALJ's Failure to Compare Mr. Claudio's Present Capabilities with the Requirements of His Past Relevant Work.*

■ Step 4 of the Secretary's sequential process requires the ALJ to determine whether Mr. Claudio is physically capable of doing his former work. That evaluation requires the ALJ to compare the physical demands of the claimant's past relevant work with his present mental and physical capabilities. *See Veal v. Bowen,* 833 F.2d 693, 697 (7th Cir.1987). Because the ALJ did not ascertain all the physical demands of Mr. Claudio's past relevant work and compare them with his present capabilities, the ALJ's decision is not supported by substantial evidence.

The ALJ found Mr. Claudio capable of performing medium work in spite of his impairment. He then reasoned that, because Mr. Claudio's former work as a casket trimmer was medium in nature, he must be able to do his former work. (Tr. 32).

Assuming that the ALJ's findings that Mr. Claudio can do medium work is correct, it does not follow that Mr. Claudio can still perform his past relevant work. Medium level work is not homogenous; some medium level jobs are much more demanding than others. The ALJ should have compared the functional demands of Mr. Claudio's actual job, or of that occupation generally, *see Veal v. Bowen,* 833 F.2d 693, 697 (7th Cir.1987) to Mr. Claudio's present capabilities. *See Williams v. Bowen,* 664 F.Supp. 1200, 1208 n. 13 (N.D.Ill.1987); *Pearson v. Bowen,* 648 F.Supp. 782, 792 (N.D.Ill.1986).

For example, the ALJ should have (1) made findings as to the amount of standing, bending and reaching required by Mr. Claudio's casket trimmer job; (2) determined whether Mr. Claudio could perform that amount of standing, bending and reaching.

The Secretary argues that substantial evidence that Mr. Claudio is disabled does not exist. Specifically, the Secretary argues that (1) no doctor stated that Mr. Claudio's condition precluded all levels of work; (2) Dr. Brundage, the consultative physician, stated that Mr. Claudio's condition did not restrict his physical capabilities.

While the ALJ might have found that Mr. Claudio was not disabled because the evidence showed that he could perform a full range of *sedentary* or other work, the ALJ did not do so. Rather, the ALJ appeared to credit Mr. Claudio's testimony, stating that (1) Mr. Claudio has severe hypertension, chest pains and arthritis (Tr. 32); (2) Mr. Claudio's cardiac symptoms "would only prohibit lifting in excess of 50 pounds" [2] (Tr. 31). The ALJ then concluded that since Mr. Claudio's past work did

---

**2.** In fact, the ALJ specifically found that Mr. Claudio has the RFC to perform work-related

activities except for work involving heavy lifting. (Tr. 32).

not require lifting of over 50 pounds, he could still perform it. (Tr. 31, 32). But because the ALJ's premise—that casket trimming did not require lifting over 50 pounds—falls, so does his conclusion. *See Williams v. Bowen*, 664 F.Supp. 1200, 1209 (N.D.Ill.1987) ("Secretary's decision cannot be affirmed on the basis of 'might haves.'")[3]

In the absence of substantial evidence to support the Secretary's finding that Mr. Claudio had the capacity to perform his past relevant work, this court remands for consideration of Step 5: whether jobs which Mr. Claudio can perform exist in significant numbers in the national economy.

## CONCLUSION

The ALJ's decision is REVERSED. This case is remanded to the ALJ for proceedings consistent with this opinion.

---

3. While the reports of Dr. Brundage and Dr. Pilapil (Tr. 179, 101) support a conclusion that Mr. Claudio could perform any level of work, including heavy work such as casket trimming, the ALJ apparently did not credit these reports as he found that Mr. Claudio could not perform heavy work. (Tr. 32 at #5).